## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

### BID PROTEST

| | |
|---|---|
| STEVENS AEROSPACE AND DEFENSE SYSTEMS, LLC, | **FILED UNDER SEAL** |
| Plaintiff | |
| v. | Case No. _____ |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## <u>COMPLAINT</u>

Stevens Aerospace and Defense Systems, LLC ("Stevens") files this Complaint against the Defendant, the United States of America, and states as follows:

### I.    NATURE OF THE ACTION

1.    This is a post-award bid protest challenging the decision of the Department of the Air Force ("Air Force" or the "Agency") to re-award a contract to Borsight, Inc. ("BOR" or "Borsight") under Solicitation No. FA8106-23-R-0001 ("Solicitation" or "RFP"), the T-6A Avionics Replacement Program, following its corrective action in response to Stevens' initial protest of the original award to BOR (Case No. 25-cv-1339).

2.    Stevens submitted a technically acceptable, competitively priced proposal that, but for Agency's multiple evaluation errors, improper unequal treatment, and irrational best-value determination, would have resulted in Stevens receiving the award instead of BOR. The Agency's

decision to award the contract to BOR was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with procurement law.

3.      But for the Agency's error, there is a substantial chance Stevens would have been selected for an award.

4.      Stevens respectfully seeks an order from this Court holding the Agency's evaluation of Stevens' proposal and award to BOR were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law; enjoining the Agency from proceeding with issuing any orders under the contract it awarded to BOR or otherwise seeking performance under that contract; and instructing the Agency to make an award to Stevens, or in the alternative, to reevaluate Stevens' proposal in accordance with the Solicitation's terms, conducting discussions as necessary.

## II.     PARTIES

5.      Stevens is a limited liability company organized under Delaware law with principal offices at 600 Delaware Street, Greenville, South Carolina 29605.

6.      Defendant is the United States of America acting through the Department of the Air Force, the agency within the United States Government responsible for awarding the contract that is the subject of this Complaint.

## III.    JURISDICTION AND STANDING

7.      This is a civil action for declaratory and injunctive relief filed pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1).  This Court has jurisdiction over bid protests pursuant to 28 U.S.C. § 1491(b)(1), which allows the Court to hear "an action by an interested party objecting to

a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."

8.      Stevens is an interested party because it was an actual offeror in response to the Solicitation.  As such, Stevens' direct economic interests are affected by the Agency's decision not to select Stevens for an award.  But for the Agency's errors, Stevens would have had a substantial chance of receiving the award.

## IV.    STATEMENT OF FACTS

### A.    The Solicitation

9.      On November 23, 2022, the Air Force issued Solicitation FA8106-23-R-0001 for the T-6A Avionics Replacement Program ("ARP"), seeking a single contractor to provide "all manpower, material, equipment, components, skills, expertise and knowledge, and meet all required prototype and fleet modifications to fully and successfully complete the contract for the Air Force's T-6A [ARP] to modify the Air Education and Training Command (AETC) fleet of estimated 442 T-6A trainer aircraft and ground based training simulators in accordance with the contract's Statement of Work (SOW) and to provide other items contained in the contract."  Ex. 1 at 1.

10.     The Solicitation was for "one Basic Period of 4-years (Technology Maturation Risk Reduction (TMRR), Engineering and Manufacturing Development (EMD) and Production/Installation), and one 4-year Option Period (Production and Installation) for a total of 8 years, plus a 6-month extension."  *Id.*

11.     The Solicitation established a best-value trade-off source selection process, as set forth in Section M.  Ex. 2 at 1.  The evaluation was structured around four primary factors: (1) Technical, (2) Technical Risk, (3) Past Performance, and (4) Price. *See id.*

12.     Factor 1 contained five subfactors:

a.  <u>Subfactor 1: Threshold Requirements contained in the System Requirements Document ("SRD")</u>. Offerors were required to demonstrate full compliance with all threshold requirements by completing the SF1 Threshold Compliance Tab. Proposals not meeting all threshold requirements were deemed unacceptable and ineligible for award.

b.  <u>Subfactor 2: Meeting Objective Requirements and Exceedances of Threshold Requirements contained in the SRD</u>.  Offerors could receive best-value credit for exceeding threshold requirements or meeting objective requirements in areas such as temperature qualifications, solar hardiness, reliability, maintainability, display configurability, and sustainability. The Agency evaluated the rationale and anticipated benefit for each proposed strength or significant strength.

c.  <u>Subfactor 3: Digital Engineering</u>.  Offerors were required to provide an approach for model-based systems engineering, model-based design, and delivery of technical data package digital files, as well as incorporation of digital engineering throughout the product lifecycle.

d.  <u>Subfactor 4: Schedule</u>. Offerors were required to provide a comprehensive Integrated Master Schedule meeting all SOW Appendix E milestones, and to

address approaches for design integration, interface control, and risk mitigation in the absence of certain agreements.

e. <u>Subfactor 5: Modern Open Integrated Avionics</u>. This subfactor required an approach to ensure SRD human factors and architecture suitability for Undergraduate Pilot Training and minimization of pilot workload, as well as an intellectual property ("IP") strategy identifying Government data license rights in all deliverables.

Ex. 1 at 11-15; Ex. 2 at 6-9.

13.    Only those proposals meeting the threshold requirements of Factor 1 advanced to the best-value analysis. *See* Ex. 2 at 1, 4.  To be eligible for such consideration, proposals were required to be rated "Acceptable" under Technical Factor 1, Subfactors 1 (Threshold Requirements), 3 (Digital Engineering), 4 (Schedule), and 5 (Modern Open Integrated Avionics). *See id*.

14.    Technical Risk was evaluated separately under Factor 2, which considered the likelihood of unsuccessful contract performance due to the offeror's proposed approach, and was rated as Low, Moderate, or High risk. *Id*. at 9-11.

15.    Past Performance (Factor 3) was evaluated based on the relevancy and quality of the offeror's previous contracts, considering scope, magnitude, complexity, and performance quality. *Id*. at 11-12.

16.    Price (Factor 4) was evaluated for reasonableness, realism, balance, and completeness, using a Government-provided pricing matrix. *Id*. at 14-16.  The Total Evaluated

Price ("TEP") was considered in the best-value trade-off but was less important than the technical and risk factors.

17.    Further, for all technically acceptable proposals, the Solicitation set the following weights and order of importance for the evaluation criteria:

a. Technical Subfactor 2 (*Meeting Objective Requirements and Exceedances of Threshold Requirements contained in SRD*), Factor 2 (*Technical Risk*), and Factor 3 (*Past Performance*), will be evaluated on a basis approximately equal to each other.

b. Technical Subfactor 2 (*Meeting Objective Requirements and Exceedances of Threshold Requirements contained in SRD)*, Factor 2 (*Technical Risk*), and Factor 3 (*Past Performance*), individually are more important than Factor 4 (Price).

c. Technical Subfactor 2 (*Meeting Objective Requirements and Exceedances of Threshold Requirements contained in SRD*), Factor 2 (*Technical Risk*), and Factor 3 (*Past Performance*), when combined are significantly more important than Factor 4 Price.

*See* Ex. 2 at 4.

**B.    Stevens' Proposal Submission and Debriefing**

18.    Stevens timely submitted a proposal in response to the Solicitation.

19.    On June 16, 2025, the Air Force notified Stevens that BOR had been selected for award.  Ex. 3 at 1.

20.     On June 25, 2025, the Agency provided Stevens a Post-Award Debriefing.  Ex. 4

at 1.  The Post-Award Debriefing provided the following evaluation summary for Stevens and

BOR:



Ex. 4 at 93.

21.     According to the Agency's debriefing and source selection documents, the Agency

found ██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████    *See id.*; Ex. 5 at 3, 27-30.

22.    For Technical Factor 1, ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ *Id*.

23.    For Factor 2 (Technical Risk), ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ *Id*. at 97; Ex. 5 at 12-15.

24.    For Factor 3 (Past Performance), ████████████████████

████████████████████████████████████████████████████

████████████████████. *See* Ex. 4 at 98.

25.    For Factor 4 (Price), ████████████████████████████

████████████████████████████████████████████████████

*Id*. at 99.

26.    On June 27, 2025, Stevens submitted a list of debriefing questions to the Agency. The Agency responded to these questions on July 31, 2025.  *See* Ex. 6 at 1.

27.    The Agency's responses to Stevens' post-debrief questions largely reiterated language from the Source Selection Decision Document ("SSDD") and Solicitation and provided

little additional detail or justification for the distinctions made between the proposals. *See id*. at 3-21.

### C.    Stevens Files an Initial Protest of the Air Force's Evaluation And Award Decision

28.    On August 11, 2025, Stevens filed a bid protest at this Court challenging the Air Force's evaluation and selection of BOR for award. *See Stevens Aerospace And Defense Systems, LLC v. United States*, Case No. 1:25-cv-01339-DAT, __ Fed. Cl. ___ (2025), ECF No. 1 at 1.

29.    Stevens' Complaint included twelve Counts that identified errors in the Air Force's evaluation and award decision which prejudiced Stevens, and required the Government to rescind its award to BOR. *Id*. at 9-44.

30.    In these Counts, Stevens demonstrated that the Air Force:

- ███████████████████████████████████
  █████████████████
- ███████████████████████████████████
  █████████████████████████
- ███████████████████████████████████
  ████████████████
- ███████████████████████████████████
  ███████████████████████
- ███████████████████████████████████
  ████████████████

9

████████████████████████████████████
██████████████████████████████████████
████████████████████████████



*See id.*, ECF No.1 at 1-44.

     31.     On August 16, 2025, the awardee, BOR, filed a Notice of Intervention. *See id.*, ECF No. 10 at 1.

**D.      The Government Takes Corrective Action and Stevens Voluntarily Dismisses the Protest Without Prejudice**

32.      On August 18, 2025, the United States filed a Notice of Corrective Action in the protest.  *See id*., ECF No. 12 at 1.

33.      The Notice stated that the Air Force had "decided to reconsider its award decision, including to assess the impact of the issues plaintiff has raised in its complaint."  *Id*.  The Notice described the Air Force's proposed corrective action as consisting of a "review [of] each offeror's proposal in the competitive range to ensure the evaluation was conducted in accordance with the Solicitation requirements and . . . a new comparative analysis of the proposals received in response to the Solicitation."  *Id*.  Based on this new review and comparative analysis, the Air Force would "make a new award decision."  *Id*.

34.      In light of the Air Force's intention to conduct a new evaluation and comparative analysis, Stevens filed a Notice of Voluntary Dismissal on August 19, 2026, pursuant to RCFC 41(a)(1)(A)(i).  *See id*., ECF No. 13 at 1.  The Court entered judgment dismissing Stevens 'protest without prejudice on August 20, 2025.  *See id*., ECF No. 14 at 1.

**E.      The Air Force Takes Corrective Action but Fails to Address the Prejudicial Errors Identified by Stevens in its Initial Protest**

35.      At the conclusion of its corrective action, the Air Force issued a revised Source Selection Decision Document, Ex. 16 at 1-31, a September 26, 2025 PowerPoint presentation titled *Post-Award Debriefing for Stevens Aerospace and Defense Systems, LLC (SADS) T-6A Avionics Replacement Program (ARP),* Ex.17 at 1-104, and a *Memorandum for Record* dated September

22, 2025, in which the Agency described its corrective action and notified offerors that it had once again selected BOR's proposal for award.  *See* Ex. 18 at 1-9.

36.    The *Memorandum for Record* stated that, as part of its corrective action, the Air Force ████████████████████████████████████████████████████ ████████████████████████████████████ *Id*. at 1, 2, 5.

37.    However, the Air Force ███████████████████████████████ ██████████████████████████████████████████████████████████ *Id*.

38.    As a result, the Air Force's revised evaluation of Stevens' proposal is substantively identical to its initial evaluation, and failed to resolve any of the prejudicial procurement errors that Stevens identified in its August 11, 2025 bid protest Complaint.  Due to the inadequacy of the Air Force's corrective action evaluation, Stevens timely files this post-award bid protest.

## <u>COUNT I</u>

### (The Air Force Failed to Consider Past Performance Information in Its Own Possession, which Was Too Close at Hand to Ignore)

39.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

40.    The RFP provides that Factor 3, Past Performance, will assess "the degree of confidence the Government has in an Offeror's ability to supply products and services that meet users' need, based on a demonstrated record of performance."  Ex. 2 at 11.

41.     The RFP further provides that offerors will receive one of the following Past Performance ratings: Substantial Confidence, Satisfactory Confidence, Neutral Confidence, Limited Confidence, or No Confidence.  *See id.*

42.     Section M of the RFP provided that "[p]erformance confidence is assessed at the overall Past Performance factor level after evaluating aspects of the Offeror's recent past performance, focusing on performance that is relevant to scope, magnitude, the Technical subfactors, price assessment, performance quality and complexity."  *Id.*

43.     Pursuant to the RFP, "[i]n conducting the Past Performance evaluation, the Government reserves the right to use both the information provided in the Offeror's Past Performance proposal volume and information obtained from other sources, such as, but not limited to, the Past Performance Information Retrieval System (PPIRS) or similar systems, Defense Contract Management Agency (DCMA) and commercial sources.  The Government reserves the right to use all information available to fully assess he Offeror's past performance."  *Id.* at 12.

44.     Moreover, the Air Force's Performance Quality Assessment was to consist of "an in-depth evaluation of the past performance questionnaire responses, PPIRS information, Contractor Performance Assessment Reports (CPARS) (including ratings and supporting narratives), interviews with Government customers and fee determining officials and, if applicable, commercial clients.  It may include interviews with DCMA officials or other sources known to the Government."  *Id.*

45.    With regard to assigning an overall rating, the RFP stated that "[o]fferors without a record of relevant past performance or for whom information on past performance is not available will not be evaluated favorably or unfavorably on past performance and, as a result, will receive a 'Neutral Confidence' rating for the Past Performance factor." *Id*. at 14.

46.    RFP Section L required offerors to describe "the portion of effort each team member is proposed to perform in relation to the Factor 1 Technical subfactors, Factor 4 Price, and Scope, Magnitude, and Complexity." Ex. 1 at 16.

47.    Section L further states, "The Government Past Performance Evaluation Team (PPET) evaluates each member of the offeror's team for relevancy and performance quality, based on their proposed portion of effort.  Therefore, it is important for the offeror to provide a detailed portion of the effort description, in order for the PPET to conduct an accurate assessment.  Offerors shall also provide approximate percentages for portion of effort for each team member.  For the Past Performance evaluation, the Government will use data provided by the offeror in the Past Performance volume, as well as data obtained from other sources." *Id*.

48.    Section L also required offerors to complete Section 2 of the Past Performance Questionnaire ("PPQ") attached to the RFP and email the PPQ to all points of contact listed in their Past Performance Information Form to complete the PPQ.  *Id*. at 17.  Each offeror's past performance points of contact were to complete the questionnaires and email them directly to the Past Performance Evaluation Team.  *Id*.  The RFP specified that "Offerors shall not follow-up with respondents to ensure they have completed the questionnaires.  The PPET will conduct such follow-up with any POC as necessary."  *Id*.

14

49. ███████████████████████████████████████

████████████████████████████████████. *See* Ex. 8

at 227.

50. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████. *See id.*

51. ███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████ Ex. 7 at 1.

52. In response, Stevens ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ *Id.* at 2-3.

53. Despite this explanation and ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████



████████████████████████████████████████████████████████████

███████████████████████████████████████████████. *See id.*

54.    The Air Force did not ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ Ex. 16 at 26.

55.    The Agency's failure to consider past performance information in its possession –
whether through interviews of Air Force personnel or review of documentation in its possession
such as CPARS or other PPIRS information – violates the "too close at hand" doctrine, pursuant
to which agencies may not ignore information "in the agency's possession." *Insight Public Sector,
Inc. v. United States*, 157 Fed. Cl 398, 410 (2021) (citing *ProSecure, LLC v. United States*, 151
Fed. Cl. 697, 707 (2020)); *Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 781
(2011) ("[U]nder the 'too close at hand' doctrine, FEMA would be obliged to draw upon internal
information that concerned any of the firms' prior work . . . .").

56.    As the contracting agency ████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████. It was, therefore, arbitrary and capricious for
the Air Force to ████████████████████████████████████████████

████████████████████████████████████████████████████████████

16

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████

███████████████████████████████████████████████

██████████████████████.

57.    The Air Force's improper █████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████.

*See* Ex. 8 at 227.

58.    The Air Force expressly found that ████████████████████

███████████████████████████████████████████████

█████████████████ Ex. 5 at 26. ████████████████████

███████████████████████████████████████████████

███████████ *See id.* (stating that ███████████████████████

███████████). Had the Air Force properly ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████ *See* Ex. 5 at 25.

17

███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████

59.    This ███████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████. With these proper evaluation ratings, the

RFP would require the Air Force to select Stevens for award as the offer representing the best

value to the Government.

## COUNT II

**(The Air Force's Determination that It Could Not Consider Other Past Performance Information It Received in Support of Stevens' Proposal was Improper)**

60.    Stevens incorporates by reference the allegations set forth above, as if fully set forth

herein.

61.    The Air Force also indicated in Stevens' Debriefing that ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████

62.    Specifically, █████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████. *See* Ex. 6 at 11-12.

63.    It was evident from Stevens' original debriefing that the Air Force did, in fact, have

past performance information in its possession for at least some of these references and chose not

to consider it based upon this finding.

18

████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████████████

64.    For example, ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. 5 at 25.

65.    As another example, ████████████████████████████

███████████████████████ Ex. 4 at 72.

66.    The Air Force originally ███████████████████████████

████████████████████████████████████████████

███████████████████████████████. 

67.    Following the Air Force's corrective action in response to Stevens' original protest,

the Air Force explained ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. 16 at 27.

68.    The Solicitation did not authorize the Air Force to ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████ was

arbitrary and capricious.

69.    The Air Force's improper refusal to ██████████████████████████

████████████████ Had the Agency evaluated this information, the RFP evaluation scheme would

███████████████████████████████.

19

███████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████

**COUNT III**

**(The Air Force Improperly ████████████████████████████████
███████████████████**

70.     Stevens incorporates by reference the allegations set forth above, as if fully set forth

herein.

71.     The Air Force only identified ████████████████████████████████

████████████████████████████████ Ex. 5 at 26.

72.     As described in Section M of the RFP, this consideration was to examine "█████

████████████████████████████" Ex. 2 at 13.

73.     The Air Force recognized that Stevens was ██████████████████████

████████████████████████. Ex. 4 at 69.

74.     In light of the Indefinite-Delivery, Indefinite-Quantity nature of the Contract, the

Air Force structured the price proposals in a manner that preserves its flexibility to order services

in multiple time periods.  This resulted in the total evaluated price for each offeror including a

significant amount of duplication across contract years beyond the Air Force's actual requirements

(i.e., to modify its fleet of 442 T-6A aircraft).  For example, Attachment 004, Pricing Matrix

included 768 Aircraft Production Kits (CLIN 0022 and 1022) and 767 Aircraft Production Kit

Installations (CLIN 0023 and 1023).

75.     However, ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

██████████████████████████████████████████████████

████████  Ex. 9 at 160-161.  Further, Stevens ████████████████████████

████████████████████████████████████████. *See* Ex. 8 at 3-4 (████████

██████████████████████████████████████████████████

████████████████████████████).

76.    Due to Stevens' ████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████.    ████████████████████████

████████████████████████████████████.

77.    Despite this, the Air Force determined that ██████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████. Ex.

5 at 22.

78.    Because this analysis ██████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████.

79.    Moreover, ████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

Ex. 5 at 25 (emphasis added).

80.    This is consistent with Stevens' proposal, ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████. *See* Ex. 4 at 73-76 ██████████

███████████████████████████████████).

81.    The Air Force's evaluation ████████████████████████████

█████████████████████ *See* Ex. 16 at 24-28; Ex. 18 at 6.

82.    Having documented a ████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

83.    The Air Force's errors prejudiced Stevens.  But for these errors, the Air Force could

not have concluded that █████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████ *See* Ex. 5 at

26.  Had the Air Force properly evaluated Stevens' proposal, the RFP would have required the Air

Force ████████████████████████████████.

84.    ██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████.  With these proper evaluation ratings, the

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████

RFP requires the Air Force to select Stevens for award as the offer representing the best value to the Government.

<u>**COUNT IV**</u>

**(The Air Force Improperly** ███████████████████████████████
██████████████████████████████

85.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

86.    The other ███████████████████████████████████
████████████████████████████████

87.    ████████████████████████████████████████
████████████████████████████████ Ex. 2 at 13.

88.    ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████.

89.    ███████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

90.    Stevens' past performance proposal ██████████████████████
████████████████████████████████████████. *See*
Ex. 5 at 22.

███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████

91. ███████████████████████████████████████████████

███████████████████████████████████ *See* Ex. 13 at 116.

92.    Additionally, as stated in Stevens' past performance proposal, ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Ex. 9 at 160-161.

93.    Accordingly, Stevens' past performance record ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████

94.    Despite this, the Air Force determined that ███████████████████

████████████████████████████████████████████████████

███████████████████████ " Ex. 5 at 22. ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

95.    Had the Air Force properly evaluated Stevens' proposal, the RFP would have

required the Air Force to ███████████████████████████    ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

24

███████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████ With these proper evaluation ratings, the RFP would require the Air Force to select Stevens for award as the offer representing the best value to the Government.

## COUNT V

**(The Air Force Violated the RFP by Refusing ██████████████████████████████**
**████████████████████████████)**

96.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

97.    RFP § L.4,.3.1 defines a "significant subcontractor" as "a contractor who is proposed to perform over 5% of the total effort, or a contractor who is proposed to perform less than 5% of the total effort, but is determined to be performing a critical function." *See* Ex. 1 at 17.

98.    In Stevens' June 25, 2025 Post-Award Debriefing, ████████████████████
██████████████████████████████████████████████
████████████████████ *See* Ex. 4 at 69.

99.    The Air Force further asserted in the initial debriefing ██████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████ *See id.*

100.    During corrective action, the Air Force did not ████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████.

*See* Ex. 17 at 89-70; Ex. 16 at 23.

101.    The Air Force's ████████████████████████████████

████████████████████████████ .

102.    Stevens expressly informed the Air Force that ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████



*See* Ex. 9 at 8.

103.    The record contains no contemporaneous discussion or analysis of any kind to support the Air Force's assertion that ████████████████████████████ .

104.    To the contrary, the language of the RFP and the Air Force's own evaluation demonstrate that Agency considered ████████████████████████████ .

105.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

106. Further evidence that the Air Force ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████. *See* Ex. 5 at 16; Ex. 16 at 16.

107. The Air Force's improper failure to ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.

## COUNT VI

**(The Air Force Improperly** ████████████████████████████
████████████████████████████████████████

108. Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

109. The Air Force's ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████

110. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. 2 at 6; Ex. 1 at 11.

111. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████

112. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ *Id.* at 13.

113. ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████ *Id.*

(emphasis added); *see also* Ex. 15 at 14 ███████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ ).

114.    The Air Force, however, ███████████████████████

████████████████████████████████████████████

███████████████████████ Ex. 11 at 1.  In response ███████████████

███████████████████████████████ *Id.* at 2.

115.    Stevens further addressed the ███████████████████████

████████████████████████████████████████████

███████████████████████████████████████" Ex. 12

at 44.  Stevens explained that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ *Id.*  By contrast, ███████████████████████

███████████████████████████████ *Id.*

116.    Despite Stevens explicitly stating that ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. 5 at 13.  The Air Force relied

29

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████

upon language from ███████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████ *Id.* The Agency therefore concluded that ██████████████████████

████████████████████████████████████████████████████████████

*Id.*

117.    In its response to Stevens' debriefing questions, the Air Force ████████████

████████████████████████████████████████████████████████████

███████████████████████████ *See* Ex. 6 at 9.  The Air Force's response lacks

any meaningful analysis or support for its determination that ██████████████████

███████████████████████

118.    The Agency's evaluation is incorrect.  The Solicitation required only that the

████████████████████████████████████████.  Stevens unequivocally

represented that ██████████████████████████████████████████████████

████████████████████████████████████.  Yet the Air Force ██████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████.  In doing

so, the Agency conflated ██████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████ The Air Force therefore deviated from the stated evaluation scheme and

imposed unstated criteria on Stevens.

████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
███████████████████████████████████

119. Notably, ███████████████████████████████████████████████████
█████████████████ This is a provisioned capability to ███████████████████
████████████████████████████████████████████████ . Thus, even
assuming █████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████ .

120. The Air Force ████████████████████████████████████████
████████████████████████████████ . Ex. 16 at 14.

121. The Agency's errors prejudiced Stevens.  Because the █████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
█████████████████████████████████████ .

## COUNT VII

**(The Air Force Improperly** ██████████████████████████████████
███████████████████████████

122. Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

123. The Agency's ███████████████████████████████████████████
████████████████████████████████████████████████ .

124. The Agency ████████████████████████████████████████████
█████████████████████████

█████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████

125.    First, ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*

126.    Second, ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████.

127.    Despite assessing ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████  Ex. 16 at 15.  The Agency further stated that ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

32

████████████████████████████████████████████████████████ *Id.*

(emphasis added).

128.    The Agency's evaluation is internally inconsistent. ██████████████

████████████████████████████████████████████████████████████

███████████ ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████ Ex. 16 at 15.  Thus, the Agency had no basis for ███████

████████████████████████████████████████████████████████████

██████████████████████

129.    The Agency's error prejudiced Stevens.  Had the Air Force properly assessed

████████████████████████████████████████████████████████████

████████████████████ ██████████████████████████████████████████

████████████████████████████████████████, would have rendered

Stevens' proposal the best value to the Agency.

**<u>COUNT VIII</u>**

**(The Air Force Deviated from the Solicitation's Evaluation Scheme by** ██████████████
██████████████████████████████████████ **)**

████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████

130.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

131.    Solicitation Section M.2.2.2, titled *Subfactor 2: Meeting Objective Requirements and Exceedances of Threshold Requirements contained in SRD*, states that offerors will receive "best value credit" in the form of evaluation "strengths/significant strengths" for proposed approaches that exceed the SRD Objective Requirements listed in Subfactor 2 of that RFP section. *See* Ex. 2 at 6.

132.    The RFP defines a "strength" as "[a]n aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance." *Id*.

133.    A "Significant strength" is defined as "[a]n aspect of an Offeror's proposal with appreciable merit or will exceed specified performance or capability requirements to the considerable advantage of the Government during contract performance." *Id*. The phrase "advantageous to the Government" used in the definitions of "strength" and "significant strength" refers to the anticipated level of benefit the Government receives during contract performance as a result of the strength. *Id*.

134.     Ex. 1 at 12.

34

135. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ Ex. 12 at 48, 56, 75, 81.  Indeed, Stevens'

████████████████████████████████████████████████████████

██████████████████████. *Id.* at 74-75.

136. Stevens also ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████. *Id.*

137.    Despite Stevens ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ *Id.*

(emphasis added).

138.    In its June 27, 2025 debriefing questions, Stevens asked the Air Force ████

████████████████████████████████████████████████

███████████████████ Ex. 6 at 2.  The Air Force, ██████████████████

█████████████████. *Id.*

139.    The Air Force ████████████████████████████████████

████████████████████████████████████████████████.

Ex. 16 at 8.

140.    ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

141.    This error prejudiced Stevens because, had the Air Force properly ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Stevens' proposal the best value to the Government.

36

████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████

## COUNT IX

**(The Air Force Treated Offerors in an Improper, Disparate Manner by Awarding BOR a Significant Strength Under Factor 1, Subfactor 2(b)(iii) (Display Configuration))**

142.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

143.    The record shows that Stevens ███████████████████████████████████ listed in RFP Attachment 9 for Subfactor 2(b)(iii), display configurability.  In particular, Stevens offers: ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ██████████████████. Conversely, publicly available information indicates that BOR intends to employ the Genesys IDU-680, which consists of two 6 inch-by-8 inch displays that yield, at most 96 square inches total.[1]  Stevens proposes the █████████████████████████████ that has a combined display area of ███████ square inches (t███████████ is ██████ square inches, with ███████████████████████████ measuring ██████ square inches).  *See* Ex. 12 at 47-48, 56. Having the ███████████████████████████████████████████ will allow the customer to have ██████████████████████████████████████████████. Thus, Stevens' solution gives ███████████████ square inches, while the BOR solution (at a maximum) gives 78 non-contiguous square inches based on a 3-inch by 6-inch area  for the Attitude Indicator, Horizontal Situation Indicator, and Engine Instruments.

---

[1] *See Moog Announces Genesys' Glass Cockpit Certification on Pilatus PC-7*, https://genesys-aerosystems.com/newsarticle/moog-announces-genesys-glass-cockpit-certification-on-pilatus-pc-7/.

144.    During the debriefing, the Air Force did not confirm that BOR's solution met the 80 square inch threshold, instead stating only that each offeror "met the requirements for Subfactor 4(d)" without providing documentation or specifics.  Ex. 6 at 5.  The Air Force's failure to confirm or document that BOR's proposed display configuration met the objective requirements undermines the rationality and legality of the evaluation, and indicates that BOR's proposal should not have been considered compliant for this Subfactor, let alone awarded a Significant Strength.

145.    During its corrective action, despite Stevens having raised this issue in its original protest, the Air Force did not provide any additional information about why Stevens received ███ ███████ even though it met ██████████████████ listed in RFP Attachment 9 for Subfactor 2(b)(iii), display configurability.  *See* Ex. 16 at 8.

146.    The Agency's assessment of a Significant Strength to BOR, while ██████████ ████████████, was prejudicial.  Had the Air Force properly credited Stevens ████████████ ████████ and downgraded BOR for failing to meet all objective requirements, Stevens' increased evaluation rating—coupled with the increased ratings that would result from correction of the other evaluation errors described herein—would have rendered Stevens' proposal the best value to the Air Force.

## COUNT X

**(The Agency Improperly Deviated from The RFP Evaluation Scheme by ██████████ ██████████████████████████████)**

147.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

██████████████████████████████████
████████████████████████████████████

148.    RFP § M.2.2.2, titled *Subfactor 2: Meeting Objective Requirements and Exceedances of Threshold Requirements contained in SRD*, states that offerors will receive "best value credit" in the form of evaluation "strengths/significant strengths," for proposed approaches that exceed ██████████████████████████████████████████████ *See* Ex. 2 at 6.

149.    The RFP defines a "strength" as "[a]n aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance." *Id*.

150.    A "Significant strength" is defined as "[a]n aspect of an Offeror's proposal with appreciable merit or will exceed specified performance or capability requirements to the considerable advantage of the Government during contract performance." *Id*. The phrase "advantageous to the Government" used in the definitions of "strength" and "significant strength" refers to the anticipated level of benefit the Government receives during contract performance as a result of the strength. *Id*.

151.    ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████

██████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████

152. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ *See id.* at

11.

153. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ *See id.* at 11.

154. ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

155.  Notwithstanding this ██████████████████████████

███████████████████████████████████████████████

████████████████████████████████ *See* Ex. 5 at 7.  The initial

SSDD states:



████████████████████████████████████████████████████
████████████████████████████████████████.

*See id.* 7.

156.    The above-quoted language demonstrates that ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

157.    Specifically, the Air Force ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████    *Id.* Critically, the Air Force ████████████████

████████████████████████████████████████████████████████

████████████████████████████████    *Id.*

158.    In its June 27, 2025 debriefing questions, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.    *Id.*

159.    In the Air Force's September 22, 2025 *Memorandum for Record*, the Agency states

that during its corrective action, ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

███████    Ex. 18 at 4-5.  As a result, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████:



Ex. 16 at 7.

160.    As in its initial evaluation, ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████

161.    Specifically, the Air Force repeats its error ██████████████████

████████████████████████████████████████████████████████████████

█████████████████████████    *Id*.  Yet again, ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████.  *Id*.  Thus, the Air Force

42

██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████. *Id.*

162.    The Air Force concedes in the post-corrective action SSDD that ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████    *See* RFP Att. 6, § M.2.2.2 at 6 (defining "Strength").  In light of this concession,

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████    *See* RFP Att. 7, § M.2.2.2 at 7 (emphasis added).

163.    In failing to ████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████.

164.    This error prejudiced Stevens since, ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Stevens' proposal the best value to the Government.

██████████████████████████████████████████████████

### COUNT XI

**(The Agency Improperly Rated BOR as ███████████ under Factor 1, Subfactor 2(a))**

165. Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

166. Solicitation Section M.2.2.2, titled *Subfactor 2: Meeting Objective Requirements and Exceedances of Threshold Requirements contained in SRD*, states that offerors will receive "best value credit" in the form of evaluation "strengths/significant strengths" for proposed approaches that exceed the SRD Objective Requirements listed in Subfactor 2 of that RFP section. *See* Ex. 2 at 6.

167. The RFP defines a "strength" as "[a]n aspect of an offeror's proposal that has merit or exceeds specified performance or capability requirements in a way that will be advantageous to the Government during contract performance." *Id*.

168. A "Significant strength" is defined as "[a]n aspect of an Offeror's proposal with appreciable merit or will exceed specified performance or capability requirements to the considerable advantage of the Government during contract performance." *Id*. The phrase "advantageous to the Government" used in the definitions of "strength" and "significant strength" refers to the anticipated level of benefit the Government receives during contract performance as a result of the strength. *Id*.

169. Subfactor 2(a)(iii) of Solicitation Section M.2.2.2 required the Air Force to evaluate exceedance of threshold requirements for Reliability. *See id*. at 8. In that regard, offerors were required to complete the Attachment 9, Section L Engineering Tables, which required offerors to

44

██████████████████████████████████████

discuss whether its installed system meets or exceeds "a Total Mean Time Between Failure (TMTBF) of 126 hours per HDBK-217Plus, Notice 1, for installed environment, where each component MTBF is no less than 2067 hours."

170. In response, Stevens indicated that ███████████████████████████ ████████████████████████████████████████. Specifically, Stevens' proposal stated that:



Ex. 12 at 56.

171. Additionally, Stevens' proposal also included ██████████████████████ ████████████████████████. For instance:

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  █████████████████████████████████████ *Id*. at 57.

- ████████████████████████████████████████████
  ████████████████████████████████████████████



████ *Id*. at 57-58.



████████ *Id*. at 58 (emphasis in original).

172.    The Agency's evaluation agreed with Stevens' assessment.  The Agency assigned

Stevens a ████████ for SubFactor 2(a)(iii) Reliability.   Ex. 5 at 7.  Specifically, the

SSDD stated that ████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████ *Id*.

173.    Even though BOR ████████████████ for Subfactor

2(a)(iii) Reliability, the Agency, without performing a qualitative, comparative assessment of BOR

and Stevens' proposals under this factor, determined that "[f]or Subfactor 2(a)(iii) Reliability,

BOR is considered ████████████ as BOR's proposed Reliability significant

strength offers ████████████████████████ [DELETED]

which ultimately enhances the T-6A mission capability to the warfighter when compared to [DELETED] ████████████████████████.” *Id.* at 11.

174.    In its June 27, 2025 debriefing questions, Stevens asked the Air Force why it concluded that ████████████████████████ for subfactor 2(a)(iii) even though ████ ████████████████████████. In response, the Air Force simply regurgitated the above quoted language of the SSDD but fails to explain *why* or *how* ████████████ for Subfactor 2(a)(iii) Reliability. *See* Ex. 6 at 10-11.

175.    The Agency's contemporaneous evaluation in the SSDD, and its response to the debriefing questions demonstrate that the Air Force failed to perform the necessary qualitative, comparative assessment of BOR and Stevens' proposals under Subfactor 2(a)(iii).  As a result, the Air Force's bald assertion that BOR's proposal ████████████████ for subfactor 2(a)(iii) is utterly unsupported.  The Air Force's failure resulted in the Agency unreasonably determining that ████████████████.

176.    The Air Force failed to correct this error during corrective action, and reiterated virtually verbatim the findings made during its initial, pre-corrective action evaluation.  *See* Ex. 16 at 11 (“[f]or Subfactor 2(a)(iii) Reliability, BOR is considered ████████████████, who are [DELETED] BOR's proposed Reliability significant strength offers ████████████ ████████████████ during contract performance in ████████████████ ████████████████ which ultimately enhances the T-6A mission capability to the warfighter when compared to [DELETED] ████████████████.

47

████████████████████████████████
██████████████████████████████████████
████████████████████████

177.    This error prejudiced Stevens because, had the Air Force properly evaluated proposals under Subfactor 2(a)(iii), it could not have concluded that BOR's approach ██████████ ████████████ .  The correction of BOR's improperly inflated rating under Subfactor 2(a)(iii), coupled with ████████████████████████ from correction of the other evaluation errors described herein, would have rendered Stevens' proposal the best value to the Government.

## COUNT XII

### (The Agency's Best-Value Determination was Flawed)

178.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

179.    The Agency best-value evaluation was flawed for two reasons.

180.    *First*, ████████████████████████████ ████████████████████████████ ████████████████

181.    As a part of its best-value determination, the Agency determined that ██████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████

182.     "[I]t is incumbent upon the procuring agency and reviewing court to look beyond adjectival ratings because proposals with the same adjectival rating are not necessarily of equal quality." *Sys. Application & Techs., Inc., v. United States*, 100 Fed. Cl. 687, 719 (2011), aff'd, 691 F.3d 1374 (Fed. Cir. 2012) (citing *Metcalf Constr. Co. v. United States,* 53 Fed.Cl. 617, 640–41 (2002)).

183.     

a. 

Ex. 16 at 31.

b.

Ex. 16 at 34.



c. "███████████████████████████████

████████ Ex. 17 at 98.

d. "███████████████████████████████

█████████████████████████████████

██████████████████████ Ex. 17 at 99.

184. █████████████████████████████

█████████████████████████████████

████████████████████████

185. The Agency ██████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████████

████████████████

186.    Thus, the Agency's best-value tradeoff was flawed because it did not meaningfully account for the qualitative differences in the proposals.

187.    *Second*, the Agency's tradeoff analysis was further flawed because, as demonstrated in Counts I through XI, the Agency unreasonably evaluated proposals under Factor 1, Subfactor 2, Factor 2, Factor 3. The Agency therefore used inaccurate ratings when performing

the best-value tradeoff. These underlying evaluation errors skewed the accuracy of the tradeoff analysis, rendering it meaningless.

188.    Had the Agency conducted a proper best-value evaluation, given Stevens' superiority in Factor 3 and its lower price, there is a reasonable chance Stevens would have been selected for award.

## COUNT XIII

### (The Conditions for Injunctive Relief Are Present)

189.    Stevens incorporates by reference the allegations set forth above, as if fully set forth herein.

190.    The Court should enjoin the Agency from proceeding with performance under the awarded contract.  Stevens satisfies the four factors necessary for injunctive relief.

191.    First, as addressed herein, Stevens succeeds on the merits.

192.    Second, Stevens will be irreparably harmed if the requested injunction is not granted because it has no adequate remedy in the absence of an injunction.  Stevens would lose the opportunity to fairly compete for this procurement.

193.    Third, the balance of hardships favors injunctive relief.  To the extent the Agency suffers delay or financial consequences from an injunction, these consequences are minimal and of its own making, and do not outweigh Stevens' interest in being able to fairly compete for this procurement.

194.    Fourth, the public interest weighs in favor of an injunction.  The public interest lies in preserving the integrity of competitive procurements.

## PRAYER FOR RELIEF

Stevens respectfully requests that this Court:

A.    Enter Judgment in favor of Stevens and against the United States;

B.    Declare that the Agency's evaluation and award decision were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

C.    Direct the Agency to make an award to Stevens, or in the alternative, to reevaluate Stevens' proposal in accordance with the Solicitation's terms, conducting discussions as necessary, and make a new award decision;

D.    Provide such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Stephanie M. Harden
BLANK ROME LLP
Stephanie M. Harden
1825 Eye STREET, NW
Washington, DC 20006
Telephone: 202-420-2585
Fax: 202-572-8437
E-Mail:  Stephanie.harden@blankrome.com
*Counsel of Record for Stevens Aerospace and Defense Systems, LLC*

Dated: October 6, 2025

Of Counsel:

Robyn Burrows
robyn.burrows@blankrome.com

Michael Slattery
michael.slattery@blankrome.com

Samarth Barot
Samarth.barot@blankrome.com